IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| BELINDA G. WEBB, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:07-cv-471-ID |
| | ) | |
| MICHAEL W. WYNNE, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Belinda Webb brings this action against Michael W. Wynne, Secretary of the Air Force, alleging that the Air Force discriminated against her in certain employment actions on the basis of her disability.  Webb claims that the Air Force refused to reasonably accommodate her disability and ultimately terminated her, all in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12111-12117 ("ADA").  This cause is before the Court on Wynne's Motion for Summary Judgment (Doc # 26), filed September 25, 2008.  The Court has carefully considered all submissions in support of and in opposition to the motions and the relevant case law.  For the reasons set forth below, the Court finds that Wynne's Motion for Summary Judgment is due to be GRANTED.

### I. JURISDICTION AND VENUE

The Court exercises subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331 (federal question) and 1343(4) (civil rights).  The parties contest neither personal jurisdiction nor venue, and the Court finds an adequate factual basis for each.

## II.  SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "An issue of fact is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party.   An issue is 'material' if it might affect the outcome of the case under the governing law." *Redwing Carriers, Inc. v. Saraland Apartments,* 94 F.3d 1489, 1496 (11th Cir. 1996) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).  "A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Chapman v. AI Transp.,* 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (quoting *Haves v. City of Miami,* 52 F.3d 918, 921 (11th Cir. 1995) (internal quotation marks and citations omitted)).

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the nonmoving party has failed to present evidence in support of some element of its case on

which it bears the ultimate burden of proof.  *Id.* at 322-23.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  *Id.* at 324.  To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  On the other hand, a court ruling on a motion for summary judgment must believe the evidence of the nonmovant and must draw all justifiable inferences from the evidence in the nonmoving party's favor.  *See, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *McCormick v. City of Fort Lauderdale,* 333 F.3d 1234, 1243 (11th Cir. 2003) (the evidence and all reasonable inferences from the evidence must be viewed in the light most favorable to the nonmovant).  After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c).

## III.  FACTS

The Court has carefully considered all deposition excerpts and documents submitted in support of and in opposition to the motion.  The submissions of the parties, viewed in the light most favorable to the non-moving party, establish the following relevant facts:

Webb was employed with the Department of the Air Force for ten years prior to her termination on March 26, 2007.  At the time that the alleged violations occurred, Webb was the Chief Project Manager for GCCS-AF (Global Command and Control System) and CITS (Combat Information Transport System) at Maxwell Air Force Base.

GCCS and CITS are United States Air Force system-wide computer operating systems, whose end users are units, organizations, and elements of the U.S. Air Force stationed around the world.  The help desks of the GCCS and CITS systems are staffed by non-government contract employees.  The help desks provide technical assistance and information to end users 24 hours a day, 7 days a week.  These help desks were staffed by 20 full-time contract employees.  As Project Manager, Webb managed and supervised the contract employees staffing the help desks, and she was ultimately responsible for the operations of the help desks, including work conditions, equipment, and work product.

In 1998, Webb was injured in an off duty accident. Webb filed a disability claim for Social Security benefits and was determined to be disabled under the Social Security Act from March 28, 1998 until January 15, 2001 based upon the following conditions: fibromyalgia, myofascial pain syndrome, carpal tunnel syndrome, and degenerative joint disease.

In 2001, Webb suffered a fall, which exacerbated her previous injuries.  Webb filed a claim with the Office of Worker's Compensation ("OWCP"), which was approved.  Webb was placed on full compensation by OWCP, and she was relieved of her duty to work from

4

August 2001 through August 2003.  From August 2003 through November 2004, Webb worked in her Chief Project Manager position for four hours per day and received compensation from OWCP for the other four hours.

On January 20, 2004, Dr. Teresa Allen released Webb to return to full-time duty, as long as she was permitted to split the day between 4 hours of work at the office and 4 hours of work at home.  On July 13, 2004, Webb's chiropractor examined her, and he concluded that Webb could work only on a part-time basis and that this restriction was permanent.

On September 29, 2004, OWCP required Webb to be examined by Dr. R.L. Pinchback. Dr. Pinchback concluded that Webb was capable of returning to full-time work with four-hour limits on standing, sitting, walking, and pulling, and a ten-minute break each hour. Webb returned to work full-time on November 16, 2004.  Webb worked full-time from November 16, 2004 to May 11, 2005 without incident.

After she returned to work full-time, Webb and others applied for a Computer Scientist position within the Air Force that became available.  On January 20, 2005, the Air Force issued a Candidate Referral Certificate for the position that listed only one person, Audra Pfannkuche, as qualified.  Stephen Wright III, Director of Engineering, the selecting official, chose Pfannkuche for the position.

On February 16, 2005, Webb filed a complaint with the EEOC alleging that the Air Force had failed to properly update her experience to make her competitive for the Computer Scientist position.  This complaint was settled on April 21, 2005 through mediation.  As part

of the settlement, Webb's records were updated, and Webb agreed to waive any claims relating to that complaint.

Beginning around May 12, 2005, Webb's medical condition caused her to begin to miss work.  On May 24, 2005, Webb's primary physician notified OWCP that Webb's medical condition rendered her incapable of maintaining full time employment, and he recommended that Webb work on a part-time basis for four hours per day.  Webb also requested leave without pay ("LWOP") for absences on May 18-27, which Maj. Brown approved.

On June 6, 2005, Webb requested LWOP for the period June 2, 2005 through July 17, 2005 because Webb's physician insisted that Webb refrain from working for a period of six weeks.  This request was denied due to lack of medical documentation of the need for leave. Nevertheless, Webb left work on June 6, 2005 due to her medical condition.  Webb was placed on AWOL status due to the lack of documentation.

On July 22, 2005, Webb submitted a request for LWOP for period of July 25, 2005 through October 28, 2005.  Webb received notice from OWCP that her condition was accepted as a disability by OWCP.

On October 30, 2005, Webb requested LWOP from October 31, 2005 until released by her doctor  to return to work.  On November 3, 2005, Maj. Brown denied this request as open-ended and without documentation.  On November 25, 2005, Webb notified Maj. Brown that she would not be returning to work as of October 31, 2005 due to her doctor's orders and

based on the recurrence of her injury approved by OWCP.

On March 26, 2007, Webb was terminated from her position for her continued unavailability for work, absenteeism, and inability to work a regular schedule. On March 27, 2007, Webb appealed her termination to the Merit Systems Protection Board. On May 24, 2007, Webb had her appeal dismissed so that she could pursue her claim with the EEOC. On May 25, 2007, Webb filed her complaint with this Court.

## IV. DISCUSSION

### A.    Exhaustion of Remedies

Wynne alleges that Webb failed to exhaust her administrative remedies for her claims related to her discharge. Wynne claims that Webb failed to make an informal pre-complaint regarding her discharge with an EEO counselor within 45 days of the alleged discriminatory event as required by 29 C.F.R. § 1614.105(a)(1).

Webb filed two formal EEOC complaints with the EEOC regarding alleged discrimination while she was still employed with the Air Force. The first was filed on August 29, 2005, and the second was filed on July 21, 2006. After Webb was terminated, she initially appealed her termination to the Merit Systems Protection Board. However, she moved for dismissal of that appeal on May 21, 2007, so that she could pursue her claim of discrimination with the EEOC. On May 24, 2007, her motion to dismiss was granted by the Board.

On June 19, 2007, Webb sent a letter to the EEOC requesting to amend her pending

7

EEOC claim to include her termination.  The EEOC responded that the time to amend her claim had passed, and they informed her that she would have to file a new claim.  Webb never filed a new claim with the EEOC specifically alleging discriminatory discharge.

Wynne argues that Webb never consulted with an EEOC counselor within 45 days of her discharge as required by 29 C.F.R. § 1614.105(a)(1).  While this regulation does require aggrieved federal employees to initiate contact with the EEOC within 45 days of the allegedly discriminatory event, it also contains a "good faith" provision that tolls the 45-day time limit if the employee was not notified of the time limit and was not otherwise aware of it.  29 C.F.R. § 1614.105(a)(2).  Wynne does not allege that Webb had notice of the 45 day time limit; rather, Wynne argues that Webb never satisfied this requirement at all because she did not follow the EEOC's instructions by filing a new complaint based upon the discharge.

A federal employee must exhaust administrative remedies prior to filing a civil complaint of discrimination in the workplace.  *See Brown v. Snow*, 440 F.3d 1259, 1262 (11th Cir. 2006).  Furthermore, the scope of the civil complaint is limited by the scope of the EEOC investigation which can "reasonably be expected to grow out of the charge of discrimination."  *See Gregory v. Ga. Dep't of Human Resources*, 355 F.3d 1277, 1279-80 (11th Cir. 2004).  However, courts are "extremely reluctant to allow procedural technicalities to bar claims" of discrimination.  *Id.* at 1280.  Accordingly, the scope of an EEOC complaint should not be strictly interpreted.  *Id.*

This Court finds that Webb's claims related to her termination are within the scope

8

of the complaint she filed with the EEOC.  It is undisputed that Webb was terminated for the very same reasons that formed the basis of her EEOC complaint.  Both claims revolve around the exact same issues—the nature and extent of Webb's disability and whether the accommodations she was requesting were reasonable.  Accordingly, Webb's claims related to her discharge "grow out of" her claims of discrimination alleged in her EEOC complaint. *See id.* (finding claim of retaliatory discharge "grew out of" claims of termination based upon sex and race).  Therefore, she properly exhausted her administrative remedies, and Wynne is not entitled to summary judgment on this issue.

## B.    Discrimination Claim

To establish a prima facie case of discrimination under the ADA, Webb must show: (1) she is disabled; (2) she is a qualified individual; and (3) she was subjected to unlawful discrimination because of her disability.[1]  *Holly v. Clairson Indus.*, 492 F.3d 1247, 1255-56 (11th Cir. 2007).  Wynne does not dispute that Webb is disabled within the definition of the ADA.  Therefore, this Court need only address the second two prongs of the prima facie case.

---

[1]      Both parties addressed Webb's discrimination claim as having been brought under both the ADA and § 504 of the Rehabilitation Act, codified at 29 U.S.C. § 794.  This Court analyzes Webb's claims as having been brought only under the ADA because her complaint specifically references the ADA, and it does not reference the Rehabilitation Act. The difference is merely academic, though, because "discrimination claims under the Rehabilitation Act are governed by the same standards used in ADA cases, and cases decided under the Rehabilitation Act are precedent for cases under the ADA, and vice-versa."  *See Bircoll v. Miami-Dade County*, 480 F.3d 1072, 1088 (11th Cir. 2007) (internal quotation marks omitted).

A "qualified individual" is someone who, "with or without reasonable accommodation, can perform the essential functions of the employment position." 42 U.S.C. § 12111(8). Therefore, in order to prove a claim of discrimination under the ADA, Webb must show either (1) that she can perform the essential functions of her job without accommodation, or (2) that she can perform the essential functions of her job with a reasonable accommodation. *Holly*, 492 F.3d at 1256. Consequently, an accommodation is only "reasonable," and therefore required by the ADA, if it enables the employee to perform the essential functions of the job. *Id.* (citing 29 C.F.R. § 1630.2(o)(1)(ii)). Wynne argues that Webb is not a "qualified individual" because physical presence at the office on a regular, full-time schedule was an essential function of her job.

In order to determine whether a job function is essential, "consideration shall be given to the employer's judgment," and "if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." 42 U.S.C. § 12111(8); *Holly*, 492 F.3d at 1257. When considering the employer's judgment, courts will look to both the employer's "official position," as well as testimony from the plaintiff's supervisor. *Id.* While the employer's judgment shall receive "substantial weight" in the analysis, it is not the only factor courts consider. *Id.* at 1258. These other factors include: (1) the amount of time spent on the job performing the function, (2) the consequences of not requiring the incumbent to perform the function, (3) the terms of the collective bargaining agreement, (4) the work

experience of past incumbents in the job, and (5) the current work experience of incumbents in similar jobs.  *Id.* (citing 29 C.F.R. § 1630.2(n)(3)).  In addition, the EEOC regulations identify three nonexclusive bases on which a job function may be deemed essential: (1) the reason the position exists is to perform the function; (2) there are a limited number of employees available among whom the performance of the job function can be distributed; and (3) the function is highly specialized so that the incumbent in the position was hired for his or her expertise or ability to perform the particular function.  29 C.F.R. § 1630.2(n)(2); *Holly*, 492 F.3d at 1258-59.

Though never clearly articulated in her brief, it appears that Webb is asserting that she could perform the essential functions of her job if she was allowed to work a full-time schedule with four hours at the office and four hours at home each day.  Wynne argues that this proposed accommodation is unreasonable because Webb cannot perform the essential functions of her job unless she is physically present in the office for a full-time schedule. The burden of identifying an accommodation that would allow a qualified employee to perform the essential functions of her job rests with the employee, as does the ultimate burden of persuasion with respect to showing that such accommodation is reasonable.  *Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1367 (11th Cir. 2000).

Nowhere in her brief does Webb make any meaningful attempt to address whether the accommodation she seeks would allow her to perform the essential functions of her job, or whether physical presence at the office itself is essential to her job.  The only argument Webb

puts forth on this issue is that the Air Force allowed her to work four-hours at work / four-hours at home for some amount of time that Webb never identifies. However, the mere fact that an employer has granted an accommodation in the past does not make it a "reasonable accommodation" within the definition of the ADA. *See Wood v. Green*, 323 F.3d 1309, 1314 (11th Cir. 2003) ("[P]rior accommodations do not make an accommodation reasonable.").

Furthermore, in order to demonstrate that physical presence at the office on a full-time schedule is an essential function of Webb's position as Chief Project Manager, Wynne submits a declaration from Maj. Brown, Webb's supervisor. Maj. Brown describes the position as one that requires a significant amount of responsive and reactive actions based upon unexpected problems or issues that occur. Maj. Brown also explains that allowing Webb to work only a four-hour day would require other employees to assume some of Webb's responsibilities, or the hiring of additional personnel, to complete unfinished tasks due to Webb's absence. Also, Maj. Brown states that Webb's physical presence at the office is necessary because (1) she can not efficiently and effectively supervise and manage the human and physical resources for which she is responsible from a remote location, and (2) she can not efficiently and effectively communicate with her team from a remote location.

Under these circumstances, this Court finds that Webb has failed to meet her burden to identify a reasonable accommodation that would allow her to perform the essential functions of her position. This Court's conclusion is supported by the weight of authority, both in this Circuit as well as in others, that have found requests for similar accommodations

12

to be unreasonable.  *See Terrell v. USAir*, 132 F.3d 621, 626-27 (11th Cir. 1998) (finding part-time work was not a reasonable accommodation where employer had no part-time positions available); *Jackson v. Veterans Admin.*, 22 F.3d 277, 278-79 (11th Cir. 1994) (finding that physical presence on the job was an essential function of housekeeping aide, and that accommodating sporadic, unpredictable absences for arthritis treatment was unreasonable); *Mulloy v. Acushnet Co.*, 460 F.3d 141, 153-54 (1st Cir. 2006) (finding physical presence was essential function of senior electrical engineer, and proposed accommodation of working remotely was unreasonable); *Tyndall v. Nat'l Educ. Ctrs., Inc. of Cal.*, 31 F.3d 209, 213 (4th Cir. 1994) ("Except in the unusual case where an employee can effectively perform all work-related duties at home, an employee who does not come to work cannot perform any of his job functions, essential or otherwise. . . . Therefore, a regular and reliable level of attendance is a necessary element of most jobs." (internal quotation marks omitted)); *Hypes v. First Commerce Corp.*, 134 F.3d 721, 726-27 (5th Cir. 1998) (finding physical presence in the office during normal business hours was an essential function of a loan review analyst, and requested accommodation of flex-time was unreasonable); *Vande Zande v. State of Wis. Dep't of Admin.*, 44 F.3d 538, 545 (7th Cir. 1995) ("An employer is not required to allow disabled workers to work at home, where their productivity inevitably would be greatly reduced."); *Mason v. Avaya Commc'ns, Inc.*, 357 F.3d 1114, 1124 (10th Cir. 2004) (finding work-at-home accommodation for service coordinator position was unreasonable because physical attendance was an essential function

of the job); *see also Wood*, 323 F.3d at 1314 (employee's requested accommodation of indefinite leaves of absence due to cluster headaches was unreasonable); *Earl*, 207 F.3d at 1366 (finding punctuality was an essential function of employee's job as Store Area Coordinator, and that requested accommodation to be able to arrive at work at any time, without reprimand, was unreasonable).

Consequently, Webb has failed to prove a prima facie case of discrimination under the ADA because she is not a "qualified individual." Therefore, Wynne is entitled to summary judgment on all of Webb's discrimination claims.

## B.     Retaliation

In Webb's brief, she articulates a claim alleging that the failure to promote her in May 2005 and her termination in March 2007 are both instances of retaliation against her in violation of the ADA.

However, nowhere does Webb articulate a claim of retaliation in her complaint. For this reason alone, Wynne is entitled to summary judgment on this issue. *See Gilmour v. Gates, McDonald and Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment.").

Even if this Court were to entertain Webb's retaliation claim, Wynne would still be entitled to summary judgment on the merits of the claim. With respect to the 2005 promotion, Webb has presented no evidence regarding who the decision maker for that promotion was, and whether that person had any knowledge that Webb had engaged in

protected expression the decision was made. *See, e.g.*, *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1278 (11th Cir. 2008) (in order to prove prima facie case of retaliation, plaintiff must show that "decision maker was aware of the protected conduct at the time of the adverse employment action").

Moreover, Webb has failed to prove a prima facie case of retaliation based on her termination in March 2007, which was almost a year after her most recently filed EEOC charge of discrimination. *See, e.g.*, *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (noting that "[a] three to four month disparity between the statutorily protected expression and the adverse employment action is not enough," and "in the absence of other evidence tending to show causation, if there is a substantial delay between the protected expression and the adverse action, the complaint of retaliation fails as a matter of law").

## V. CONCLUSION

For the reasons set forth above, it is CONSIDERED and ORDERED that

(1)    Defendant's Motion for Summary Judgment (Doc # 26) be and the same is hereby GRANTED.

(2)    All claims and this case are DISMISSED WITH PREJUDICE.

(3)    The pretrial and the trial scheduled in this matter are CANCELLED.

This Court will enter a separate final judgment taxing costs.

DONE this 3rd day of November, 2008.

_____/s/ Ira DeMent_____
SENIOR UNITED STATES DISTRICT JUDGE